## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL IMMIGRATION LAW CENTER, | |
| Plaintiff, | |
| v. | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | Civil Action No. 1:19-cv-00866 |
| and | |
| UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, | |
| Defendants. | |

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Fed. R. Civ. P. 65, Plaintiff National Immigration Law Center ("NILC") respectfully moves for entry of a preliminary injunction to enjoin the unlawful attempts of Defendants Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE") to impede NILC's efforts to obtain agency records concerning the identities of all ICE, Homeland Security Investigations ("HSI"), or other DHS personnel who were physically present during a worksite enforcement operation conducted on April 5, 2018, at Southeastern Provision located at 1617 Helton Road, Bean Station, Tennessee. NILC seeks an order compelling Defendants DHS and ICE to expedite the processing of NILC's Freedom of Information Act request for records and immediately produce all responsive records to NILC on or before April 2, 2019.

On March 25, 2019, Plaintiff's counsel emailed the General Counsel for the Defendant, Department of Homeland Security, pursuant to Local Civil Rule ("LCvR") 7(m) in a good faith

effort to determine whether there is any opposition to the relief sought in this Motion and to determine if it is possible to narrow areas of disagreement. On March 26, 2019, Plaintiff's counsel left a voicemail with the Office of the General Counsel for the Defendant, Department of Homeland Security. At the time of the filing of this Motion, Plaintiff's counsel has not received any response to the email and the voicemail.

The grounds for this motion are set forth in the accompanying memorandum of points and authorities. NILC asks that the Court, pursuant to LCvR 65.1(d), schedule a hearing on this application for a preliminary injunction at the Court's earliest convenience prior to April 2, 2019.

Dated:  March 26, 2019                    Respectfully  submitted,

/s/  Donald  P. Salzman
Donald  P. Salzman,  DC Bar No.  479775
1440 New York Avenue,  N.W.
Washington,  D.C.  20005
T: 202-371-7983
F: 202-661-9063
E: Donald.Salzman@probonolaw.com

Eben P. Colby,  MA Bar No. 651546, Motion
for Pro Hac Vice  to be Filed
500 Boylston  Street
Boston, Massachusetts  02116
T: 617-573- 4855
F: 617-305-4855
E: Eben.colby@probonolaw.com

Arthur  R. Bookout,  DE Bar No. 5409, Motion
for Pro Hac Vice  to be Filed
One Rodney Square
920 N. King  Street
Wilmington,  Delaware  19801
T: 302-651-3026
F: 302-434-3026
E: Art.bookout@probonolaw.com

Jason S. Levin,  DE Bar No. 6434, Motion  for
Pro Hac Vice  to be Filed
One Rodney Square
920 N. King  Street
Wilmington,  Delaware  19801
T: 302-651-3086
F: 302-434-3085
E: Jason.levin@probonolaw.com

*Counsel for National Immigration Law Center*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

NATIONAL IMMIGRATION LAW CENTER,

        Plaintiff,

    v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

        Civil Action No. 1:19-cv-00866

and

UNITED STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT,

        Defendants.

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

    Plaintiff National Immigration Law Center ("NILC") respectfully submits this memorandum of points and authorities in support of its motion for preliminary injunction.

**I.
PRELIMINARY STATEMENT**

    This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 seeking the expedited processing and release of agency records concerning the identities of all U.S. Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), or other Department of Homeland Security ("DHS") personnel who were physically present during a worksite enforcement operation conducted on April 5, 2018, at Southeastern Provision located at 1617 Helton Road, Bean Station, Tennessee.  NILC submits that the requested information fits squarely within the narrow category for which Congress has mandated expedited processing under 5 U.S.C. § 552(a)(6)(E)(v)(II) and 28 C.F.R. §

16.5(d)(1)(iii). Nonetheless, in violation of FOIA and Defendants' own regulations, DHS and ICE have failed to process NILC's expedited request even within the 20-business-days' time frame for processing a standard FOIA request. Defendants have offered no explanation for their failure to respond to NILC's request. Because time is at the core of NILC's rights and Defendants' obligations, NILC seeks the Court's expedited consideration of this matter and entry of an order compelling Defendants DHS and ICE to process and immediately produce all responsive records to NILC on or before April 2, 2019.

## II.
## STATEMENT OF FACTS

**A.**   **The Tennessee Workplace Raid**

On April 5, 2018, in a calculated, militaristic fashion, armed officers from several agencies, including ICE and HSI (the "Officers"), descended on a meatpacking plant in Bean Station, Tennessee (the "Raid"). (Decl. Of Nora A. Preciado In Supp. Of Pl's Mot. For Expedited Proceedings And Mot. For Prelim. Inj. ("Decl.") ¶ 4; Compl. Ex B ¶¶ 1-3.) These Officers were not searching for terrorists, armed criminals, or violent felons. Rather, the Officers were assisting with the execution of an IRS search warrant for financial documents related to the alleged crimes of the plant's owner, James Brantley. (*Id.*) In an intricately planned operation, the Officers ignored the scope of the IRS warrant and executed the largest workplace immigration raid in nearly a decade, seizing and arresting approximately one hundred Latino workers. (*Id.*) The Officers physically and verbally abused the Latino workers. (*Id.*) The plant's Caucasian workers, however, were not subjected to the same treatment. (*Id.*) Ultimately, only eleven of the approximately one hundred workers arrested were charged with any crime, and of those, none were charged with a violent crime. (*Id.*)

2

**B.**   **NILC's FOIA Request**

NILC is a nonprofit legal advocacy organization that engages in policy analysis, advocacy, education, and litigation to promote and advance the rights of low-income immigrants and their families.  (*Id.* ¶ 2.)  NILC serves as an important resource to a broad range of immigrant advocacy groups, community organizations, legal service organizations, and the public.  (*Id.*)  It also represents individuals who have experienced violations of their constitutional rights.  (*Id.*)  NILC submitted the Request that is the subject of this action. (*Id.*) NILC is a "person" within the meaning of 5 U.S.C. § 551(2).

On December 7, 2018, NILC submitted the Request to DHS and ICE by fax.  (*See* Compl. for Injunctive Relief (the "Complaint" or "Compl.") Exs. L & K; Decl. ¶ 5.)  The Request, assigned FOIA Number 2019-HQFO-00214, was narrow, targeted, and detailed.  (Decl. ¶ 5; Compl. Ex. J.)  It seeks records related to ascertaining the identities of all ICE, HSI, or other DHS personnel physically present during the Raid on Southeastern Provision located at 1617 Helton Road, Bean Station, Tennessee on April 5, 2018.  (Decl. ¶ 5; Compl. Ex. J, at 1.)

Specifically, the Request asked only for:

> [T]he identities of all ICE, HSI or other Department of Homeland Security personnel physically present during the above-referenced Raid, including, but not limited to:
> a)   Full name;
> b)   Rank or official title; and
> c)   Office location.

(Compl. Ex. J, at 1.)

NILC requested a waiver of all fees for the Request pursuant to 5 U.S.C. § 552(a)(4)(A) because disclosure of the requested information was in the public interest and not in NILC's commercial interest.  (Compl. Ex. J, at 2.)  Numerous news accounts reflect the strong and

sustained public interest in the records the NILC seeks.[1]   NILC also requested expedited

processing pursuant to 5 U.S.C. § 552(a)(6)(E) and 28 C.F.R. § 16.5(d)(1) and explained in the

---

[1] *See* "ICE Raids Meatpacking Plant in Rural Tennessee; 97 Immigrants Arrested," Washington Post (Apr. 6, 2018), https://www.washingtonpost.com/local/immigration/ice-raids-meatpacking-plant-in-rural-grainger-county-more-than-95-immigrants-arrested/2018/04/06/4955a79a-39a6-11e8-8fd2-49fe3c675a89_story.html?noredirect=on&utm_term=8618d327eb39, "Families Wait for Answers After ICE Raid in Grainger County," WBIR (Apr. 6, 2018), https://www.wbir.com/article/news/local/families-wait-for-answers-after-ice-raid-in-grainger-county/51-536062125; "Affidavit Details Alleged Worker Exploitation, Tax Fraud at Grainger Plant," WBIR (Apr. 6, 2018), https://www.wbir.com/article/news/crime/affidavit-details-alleged-worker-exploitation-tax-fraud-at-grainger-co-plant/51-535625793; "Large Cash Withdrawals Led Federal Authorities to Grainger County Slaughterhouse," ABC 6/WATE (Apr. 6, 2018), https://www.wate.com/news/local-news/97-detained-at-grainger-co-slaughterhouse-following-ice-raid/1104512258; "IRS, ICE Officials Raid Grainger County Meat Packing Plant," Citizen Tribune (Apr. 6, 2018), https://www.citizentribune.com/news/local/irs-i-c-e-officials-raid-grainger-county-meat-packing/article_214bbe7e-39ba-11e8-b62c-bb1f2d394701.html; "ICE raids Grainger County meatpacking plant amid charges owners avoided $2.5M in payroll taxes," Knox News (Apr. 5, 2018), https://www.knoxnews.com/story/news/crime/2018/04/05/ice-raids-meatpacking-plant-grainger-county/490673002/; "97 Arrested in Immigration raid at TN Beef Plant," Ag Web (Apr. 6, 2018), https://www.agweb.com/article/97-arrested-in-immigration-raid-at-tn-beef-plant/; "At least 50 detained in Tennessee Immigration Raid," Mountain news/WKYT (Apr. 6, 2018), https://www.wkyt.com/content/news/478981663; "An ICE Raid Has Turned the Lives of Hundreds of Tennessee Kids Upside Down," The New Yorker (Apr. 24, 2018), https://www.newyorker.com/news/dispatch/an-icesmall-raid-has-turned-the-lives-of-hundreds-of-tennessee-kids-upside-down; "Workers detained in massive Tennessee raid sue ICE officers," NBC news (Feb. 21, 2019), https://www.nbcnews.com/news/latino/workers-detained-massive-tennessee-raid-sue-ice-officers-n974116; "Bean State ICE raid: Workers sue agents, Trump administration in immigration roundup," Knox News (Feb. 22, 2019), https://www.knoxnews.com/story/news/2019/02/21/bean-station-ice-raid-undocumented-immigrants-sue-agents-roundup-trump-border-wall-illegal/2936489002/; "Bean Station ICE raid: Workers want fast track for lawsuit against Trump admin," Knox News (Feb. 27, 2019), https://www.knoxnews.com/story/news/crime/2019/02/27/tennessee-ice-raid-bean-station-slaughterhouse/2990085002/; "Immigration Raid Violated Latino Workers' Rights, Lawsuit Says," Bloomberg Law (Feb. 21, 2019), https://news.bloomberglaw.com/daily-labor-report/immigration-raid-violated-latino-workers-rights-lawsuit-says; "ICE Agents Accused of Excessive Force, using Racial Slurs During Tennessee Slaughterhouse Raid: Lawsuit," Newsweek (Feb. 24, 2019), https://www.newsweek.com/ice-agents-accused-punching-immigrants-yelling-racial-slurs-during-1341984; "Workers detained in Bean Station ICE raid filing suit, claiming rights violations," ABC 6/WATE (Feb. 21, 2019), https://www.wate.com/news/local-news/workers-detained-in-bean-station-ice-raid-filing-suit-claiming-rights-violations/1799260636.

Request why NILC is entitled to expedited treatment.  (Compl. Ex. J, at 3.)  After NILC sent the Request to Defendants, DHS responded by letter dated December 12, 2018 (the "DHS letter"), acknowledging that it had received the Request on December 11, 2018.  (Decl. ¶ 9; Compl. Ex. M.)  The DHS letter assigned ICE FOIA Case Number 2019-HQFO-00214 to the Request and transferred the Request to the FOIA Officer for ICE.  (Decl. ¶ 9.)  ICE never acknowledged the Request.  No further communication of any kind has been sent to NILC from Defendants to date. (Decl. ¶¶ 11-13.)

Since then, on February 21, 2019, NILC has filed a class action lawsuit on behalf of seven individuals arrested during the Raid against several named Officers and Does Defendants 1-30 to defend their rights under the Fourth and Fifth Amendments to the United States Constitution.  This litigation is currently pending in Case No. 3:19-cv-00062 in the United States District Court for the Eastern District of Tennessee, Knoxville Division (the "Raid Litigation"). (Decl. ¶ 3; Compl. Ex. B.)  The Raid Litigation alleges violations of equal protection, conspiracy to violate civil rights, failure to prevent violation of civil rights, unreasonable search and seizure, and excessive force, and seeks compensatory and punitive damages.  (Compl. Ex. B.)  Hoping to prevent this FOIA litigation, NILC attempted to obtain the information sought here through narrowly tailored discovery requests to Defendants in the Raid Litigation.   (Compl. Ex. G.) Defendants in the Raid Litigation refused on March 8, 2019.  (Compl. Ex. H.)  NILC suspects that if the Doe Defendants are not properly named by April 5, 2019 – the one-year anniversary of the Raid – they will argue that the statute of limitations bars any claims against them in the Raid Litigation.   NILC believes such arguments will be wrong as a matter of law, but even still, Defendants should not be allowed to deny NILC its right to public information solely as an

attempt to try to gain an advantage in the Raid Litigation.  As a result, NILC filed the Complaint in this matter.

### III.
### ARGUMENT

The simple facts of this case show that the Defendants have failed in their obligations under the FOIA, and pursuant to that act, this Court should immediately enjoin and order Defendants to process NILC's Request on an expedited basis and produce any records responsive to NILC's Request.  Defendants' failure to respond to the Request constitutes a continuing impediment to NILC's legal rights, and the Court should immediately enjoin Defendants' unlawful conduct.

Injunctive relief is appropriate where, as here, the government has refused to comply with a lawful request for information and expedited processing under the FOIA.  *See Washington Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 76 (D.D.C. 2006); *see also Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 30, 35 (D.D.C. 2006).  This Court should grant injunctive relief because the four traditional factors assessed when considering injunctive relief weigh in NILC's favor.  NILC is likely to prevail on the merits since Defendants have made no attempt to process NILC's lawful Request within the statutory deadlines prescribed by the FOIA. Without injunctive relief, NILC will suffer irreparable harm by being prohibited from gaining information necessary to litigate on behalf of the Raid Litigation Plaintiffs who have diligently sought this information through other avenues.  Granting injunctive relief and ordering Defendants to comply with their lawful obligations does not burden Defendants' interests and is clearly within the public interest.

**A.**     **The Court Has Jurisdiction To Grant The Requested Relief.**

The Court's jurisdiction to consider this matter and grant appropriate relief is clear. FOIA provides, in pertinent part, that "[o]n complaint, the district court . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  *See* 5 U.S.C. § 552(a)(4)(B); *see also Al-Fayed v. CIA*, 254 F.3d 300, 305 (D.C. Cir. 2001).  FOIA further provides that "[a]ny person making a request to any agency for records . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph."  5 U.S.C. § 552(a)(6)(C)(i).  Here, Defendants have failed to produce any documents responsive to the Request, or to seek an extension of the time in which to respond.  NILC has therefore exhausted all administrative remedies regarding the Request.  *See* 5 U.S.C. § 552(a)(6)(C)(i).

**B.**     **Preliminary Injunction Is The Proper Remedy.**

The "standard remedy" for a violation of FOIA is injunctive relief.  *See Middle E. Forum v. Dep't of Treasury*, 317 F. Supp. 3d 257, 265 (D.D.C. 2018).  In considering a request for preliminary injunction, the court should assess four factors: (1) the likelihood of success on the merits, (2) whether the plaintiff will suffer irreparable injury if the injunction is not granted, (3) whether an injunction would substantially injure other interested parties, and (4) whether the public interest would be furthered by the injunction.  *See Washington Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 67 (D.D.C. 2006).  This Court should grant NILC's Motion for Preliminary Injunction because NILC prevails on every factor.

**1.**     **NILC Is Likely To Prevail On The Merits.**

NILC will prevail on the merits here because Defendants have done nothing in response to the Request.  In the context of a FOIA lawsuit, a likelihood of success means "whether the

7

plaintiff is entitled to full FOIA processing of its records request." *Washington Post*, 459 F. Supp. 2d at 68.  The processing of a FOIA request imposes three duties upon an agency: (1) to respond in writing to the requestor with certain statutorily prescribed information within 20 business days;[2] (2) to make a reasonable search for responsive records; and (3) to disclose, in a timely manner, all records that do not fall within nine narrowly construed statutory exemptions. *See* 5 U.S.C. § 552(a).  Defendants DHS and ICE failed to meet their obligations in all three categories.

(a)     <u>Defendants Failed To Respond Within The Required Time Frame</u>.

Under 5 U.S.C. § 552(a)(6)(A)(i), an agency that receives a FOIA request must respond in writing to the requestor within 20 business days after receipt of the request, excluding legal public holidays.  In its response, the agency must:  inform the requestor as to whether it intends to comply with the request; provide reasons for its determination; and inform the requestor of his or her right to appeal the determination.  *See* 5 U.S.C. § 552(a)(6)(A)(i) FOIA provides for an extension of this deadline "[i]n unusual circumstances" but limits this extension to "ten working days."  5 U.S.C. § 552(a)(6)(B)(i).  Such extension requires the agency to provide written notice to the person making the FOIA request setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched.  *See Id.*

A court is also empowered under 5 U.S.C. § 552 (a)(6)(A-C) to further extend an agency's time to respond in "exceptional circumstances."  While the statute does not provide a list of situations that would constitute "exceptional circumstances," it clarifies that "the term 'exceptional circumstances' does not include a delay that results from a predictable agency

---

[2]  Although NILC requested expedited review and believes that it is entitled to expedited processing of its FOIA request, NILC is using the standard 20-day timeline for purposes of showing that Defendants did not comply with the statutory deadline.

workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.A. § 552 (a)(6)(C)(ii).  The Department of Justice's Handbook for Agency Annual Freedom of Information Act Reports (the "Handbook") suggests that a government shutdown would not constitute an "exceptional circumstance."  On page nine, the Handbook directs that "even where an entire agency FOIA office is closed due to weather conditions, furloughed employees, or other circumstances, the agency must count those days for reporting purposes."  (Compl. Ex. A, at 9.)

NILC first sent its Request by fax to both DHS and ICE on December 7, 2018.  (Compl. Exs. L & K; Decl. ¶ 5.)  In response, NILC received a letter from DHS acknowledging that DHS received NILC's Request on December 11, 2018 but noted that it was immediately transferring the request to the ICE FOIA Office.  (Compl. Ex. M; Decl. ¶ 9.)  Importantly, nowhere in the DHS letter did DHS inform NILC as to whether it intended to comply with the Request, nor did it provide notice of any intent to seek an extension.  (*See* Compl. Ex. M.)  ICE never acknowledged receipt of the Request.  After the letter from DHS, no further communication of any type was received from either DHS or ICE.  (Decl. ¶¶ 11-13.)

Based on DHS's representation that the agency received NILC's Request on December 11, 2018 – and even assuming no grant of NILC's request for expedited processing – DHS was required to respond to the Request on or before January 7, 2019.  And if this Court were to factor in the 35-day government shutdown from December 22, 2018 through January 25, 2019, the deadline to respond would have been on or before February 11, 2019.  Because neither of the Defendants responded to the Request, they have failed to comply with their obligations to respond within 20 days of a FOIA request pursuant to 5 U.S.C. § 552(a)(6)(A)(i).

(b)     <u>There Is No Evidence That Defendants Attempted To Search For Responsive Records</u>.

Under 5 U.S.C. § 552(a)(3)(C), any agency who receives a FOIA request must make a reasonable search for responsive records.  Here, there is no evidence that Defendants made any search for records.  DHS transferred the request to ICE the day after receipt of NILC's Request, and made no mention of any search in its letter to NILC.  (Compl. Ex. M.)  ICE never responded to the Request in any capacity.  (Decl. ¶ 12.)  Had ICE made a search for responsive records, but decided not to release them, ICE would have been required to give NILC notice of any statutory exemption that applied to the Request.  The fact that no records were produced and ICE never claimed an exemption to withhold records is evidence that ICE also failed under its obligation to make a reasonable search.

(c)     <u>Neither Defendant Produced Any Records</u>.

The FOIA also requires an agency to disclose in a timely manner, in response to a FOIA request, all records that do not fall within nine narrowly construed statutory exemptions.  *See* 5 U.S.C. § 552 (a)(3)(A); 5 U.S.C. § 552(b)(1)-(9).   In the more than three months since NILC requested information from Defendants, no records have been sent by either DHS or ICE, nor has DHS or ICE claimed any statutory exemption to the production of the requested information.  That alone is sufficient for NILC to prevail.  *See Washington Post*, 459 F. Supp. 2d 74-76; *see also Elec. Privacy Info. Ctr.*, 416 F. Supp. 2d at 35, 40 (granting injunction after defendant failed to respond to expedited FOIA request within twenty business days and collecting cases granting injunctions).

**2.     NILC Will Suffer Imminent Irreparable Harm If Not Granted Injunctive Relief.**

NILC also will suffer imminent irreparable injury if the information is not produced on or before April 2, 2019.  NILC, on behalf of its clients in the Raid Litigation, seeks only

information necessary to identify and serve process on the officers who executed the Raid, before the Doe Defendants in the Raid Litigation may try to claim that the statute of limitations has expired. This Court has held that the mere possibility that the running of a statute of limitations would result in "no remedy against a culpable defendant inflicts an 'irreparable injury.'" *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 749 (D.C. Cir. 2016) (granting mandamus relief and ordering entry of deferred prosecution agreement after finding irreparable injury because the government "might be unable to re-indict because of the statute of limitations" and that "possibility" resulted in irreparable harm) (citation omitted).

As detailed more fully in the Complaint in the Raid Litigation (Compl. Ex. B), when heavily armed Officers in bullet-proof vests descended onto the plant during the Raid, other Officers formed a perimeter around the plant and blocked every exit (*id*. ¶ 1). They used official vehicles to seal off the one public road to the plant. (*Id*.) Law enforcement helicopters flew above the plant, securing and surveilling the premises. (*Id*.) Upon entry, the Officers quickly fanned out, some with their firearms drawn, and screamed at the workers inside to stop moving. (*Id*.) The workers, terrified and confused, feared the commotion was a terrorist attack, a mass shooting, or a fire. (*Id*.) The Officers forcefully seized and arrested approximately 100 Latino workers. (*Id*. ¶ 3) In the process, the Officers berated the workers with racial slurs, punched one worker in the face, and shoved firearms in the faces of many others. (*Id*.) Meanwhile, the Officers did not detain the plant's Caucasian workers or subject them to the same intrusive and aggressive treatment and prolonged detention that the Latino workers experienced. (*Id*.) Prior to the Raid, the Officers did not know the identities or the immigration status of any worker in the plant. (*Id*. ¶ 5) They knew only that many of the workers were "Hispanic." (*Id*.) Only after unlawfully detaining the Latino workers – and, in many instances, not until after transporting the

workers to an offsite location – did the Officers question the workers about their identity or immigration status.  (*Id.*)

NILC believes that the Officers conspired to plan and execute the forceful and prolonged seizure of the plant's Latino workforce solely on the basis of their actual or apparent race or ethnicity.  (*Id.* ¶ 6)  The Officers made arrests without a valid arrest warrant, probable cause that each worker had violated U.S. immigration or criminal laws, or any exigent circumstances.  (*Id.*)  In executing some of these arrests, the Officers used brutal and excessive force without any provocation.  (*Id.*)  In response to these egregious acts by the Officers, the Raid Litigation Plaintiffs filed suit against those Officers to enforce their constitutionally protected rights.[3]

But the Raid Litigation Plaintiffs and the proposed class risk losing their claims against the Doe Defendants if they cannot name them individually in the Raid Litigation prior to April 5, 2019.  The Raid Litigation Plaintiffs bring constitutional claims pursuant to *Bivens* against the individual Officers whose actions violated their rights.  *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Under Tennessee law, such claims have a one-year statute of limitations.  *See Zundel v. Holder*, 687 F.3d 271, 281 (6th Cir. 2012) (stating that Tennessee's one-year statute of limitations for personal tort actions applies to *Bivens*

---

[3] The Raid Litigation Plaintiffs can seek information to learn the names of these Officers in one of three ways:  (1) party discovery in the Raid Litigation, (2) issuing a subpoena in the Raid Litigation to the agencies who hold the records, or (3) FOIA requests.  The Raid Litigation Plaintiffs have attempted to gain the requested information through all of these avenues.  The Raid Litigation Plaintiffs filed a Motion for Expedited Discovery in the Raid Litigation, which has been met by a refusal from the AUSA's office to turn over any information.  (Compl. Ex. G.) Indeed, Defendants responded by claiming that the proper avenue to obtain such information was through the agencies.  NILC is trying to do just that with the Complaint and by serving a subpoena in the Raid Litigation to the agencies.  (Compl. Ex. I.)  So far, the agencies have refused, necessitating this action.  Moreover, this is not the first FOIA request NILC sent trying to get this information.  In April 2018, NILC sent a FOIA request seeking broader information, but subsequently sent the Request in order to more quickly get the narrower set of information necessary to identify and serve the Doe Defendants.  (Compl. Ex. C.)

claims that sound in tort).  The alleged violations occurred on April 5, 2018; therefore, the statute of limitations period applicable to the Raid Litigation Plaintiffs' claims may expire as soon as April 5, 2019.  While NILC believes that the government's stonewalling, among other reasons, makes such a claim wrong as a matter of law, NILC fully expects the government to oppose any attempt to name individually the Doe Defendants after April 5, 2019.  If the Raid Litigation Plaintiffs, through NILC's Request, are not allowed to gain the requested information and learn the names of those Officers who violated their rights before that date, they risk irreparable injury because of the "possibility" that the statute of limitations could preclude adding additional officer defendants to the Raid Litigation.  *See Fokker Servs.*, 818 F.3d at 749.

### 3. Injunctive Relief Will Not Burden Defendants' Interests.

An order enjoining Defendants and requiring them to comply with the law cannot be a "burden."  Rather, the relief that NILC seeks is nothing more than what FOIA already requires of Defendants – that they make an expedited search for responsive records and release those records to NILC.  *See* 5 U.S.C. § 552(a)(6)(E); *see also* 28 C.F.R. § 16.5(e).  NILC has shown in the Request that expedited processing was warranted.  (Compl. Ex. C, at 4-5.)  As such, injunctive relief will not burden or adversely affect the Defendants because NILC is merely asking Defendants to comply with their legal obligations.

### 4. Injunctive Relief Is In The Public Interest.

It is in the public interest for the government to comply with the law.  Congress enacted FOIA in order "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted).  "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *Bartko v. Dep't of Justice*, 79 F. Supp. 3d 167, 171 (D.D.C. 2015) (quoting *John*

13

*Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)).  Likewise, it is "axiomatic that an 'agency is required to follow its own regulations.'" *Edmonds v. FBI*, No. CIV.A. 02-1294(ESH), 2002 WL 32539613, at *3 n.3 (D.D.C. Dec. 3, 2002) (quoting *Cherokee Nation v. Babbitt*, 117 F.3d 1489, 1499 (D.C. Cir. 1997)).  Requiring Defendants in this case to abide by FOIA would therefore be in the public interest.

## IV.

## CONCLUSION

For the foregoing reasons, NILC respectfully asks this Court to enjoin Defendants DHS and ICE and to order them to immediately process the Request and to produce all documents responsive to the Request by April 2, 2019.

Dated:  March 26, 2019                    Respectfully submitted,


                                          /s/  Donald P. Salzman
                                          Donald P. Salzman, DC Bar No.  479775
                                          1440 New York Avenue, N.W.
                                          Washington, D.C.  20005
                                          T: 202-371-7983
                                          F: 202-661-9063
                                          E: Donald.Salzman@probonolaw.com

                                          Eben P. Colby, MA Bar No. 651546, Motion
                                          for Pro Hac Vice to be Filed
                                          500 Boylston Street
                                          Boston, Massachusetts 02116
                                          T: 617-573- 4855
                                          F: 617-305-4855
                                          E: Eben.colby@probonolaw.com

                                          Arthur R. Bookout, DE Bar No. 5409, Motion
                                          for Pro Hac Vice to be Filed
                                          One Rodney Square
                                          920 N. King Street
                                          Wilmington, Delaware 19801
                                          T: 302-651-3026
                                          F: 302-434-3026
                                          E: Art.bookout@probonolaw.com

                                          Jason S. Levin, DE Bar No. 6434, Motion for
                                          Pro Hac Vice to be Filed
                                          One Rodney Square
                                          920 N. King Street
                                          Wilmington, Delaware 19801
                                          T: 302-651-3086
                                          F: 302-434-3085
                                          E: Jason.levin@probonolaw.com

                                          *Counsel for National Immigration Law Center*